[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a marital dissolution action brought by the plaintiff, Michelle A. Doucette, by complaint dated August 30, 1996, seeking to dissolve the marriage as well as ancillary relief. The defendant, Lawrence B. Gauthier has appeared by counsel. The matter was claimed to the limited contested list on October 20, 1997 and heard by the court on December 5 and 12, 1997.
Based on the evidence the court makes the following findings:
The parties were married on July 14, 1979 in Windham, Connecticut;
The plaintiff has resided in this state for at least a year prior to the filing of the complaint;
The parties have three minor children borne of the marriage: Leigh Doucette Gauthier, borne April 1, 1980; Armand Benoit Gauthier, borne July 22, 1985; and, Spencer Lawrence Gauthier, borne February 27, 1990;
The plaintiff has not given birth to any other children since the marriage;
Neither party presently receives assistance from the State of Connecticut or from any town or municipality.
The plaintiff received a degree from the University of CT Page 786 Connecticut in 1976. She majored in horticulture and later worked as a manager at a local garden center. Her husband is a high school graduate. They met in 1978 and married in 1979.
The parties moved into a former chicken coop on the property of the defendant's parents in the fall of 1980. They worked together to renovate the property, adding a bathroom, central heating, and a skylight. They replaced windows and a roof. The plaintiff's mother gave them about $12,000 toward the improvements. Shrubs, a vegetable garden and a flower garden were added.
The defendant's family has owned a 38 acre tract on Jordan Lane in Windham since 1941. In 1986 the defendant's parents quit claimed 25 acres, including the chicken coop, to the parties reserving a life use of the premises. The court finds its current value to be $140,000 per the appraisal admitted in evidence as plaintiff's Exhibit B. The remainder of the premises, including the main house, was conveyed to the defendant's sister, with a reservation by the parents of a life use. The defendant's mother has died. His father continues to own a life use of both properties.
In 1984 the defendant, who has for years suffered from Krone's disease making some daily activities painful, purchased a one-half interest in a refuse pick-up business for $23,000. For several years prior to 1984 he had been working as a bus driver and had been away from home frequently. The plaintiff had assumed most of the family financial duties as well as the household chores during this period. In 1986 the defendant purchased the one-half interest of his partner for $35,000. Three years later he renamed the business Garbage Busters. During the 1980's the plaintiff started a florist business on Route 66 in Windham but it was not successful and closed.
As the business grew the marriage of the parties began to break down. There were many parties where illegal drug activity took place. There were frequent arguments as the result of illegal drug use and alcohol abuse. Evidence supports the defendant's claim that he thought the property might be seized because of the plaintiff's illegal drug activity, yet he continued to take part in the illegal use of drugs at the residence. The plaintiff started a new part time business cleaning the homes of others. The defendant spent long hours with the refuse collection business. The plaintiff did help him in the CT Page 787 venture, answering the phone, making bank deposits, and handling the finances.
In 1992 the defendant obtained a contract to remove refuse from the Town of Mansfield. He bought additional trucks, equipment and hired a full-time office worker. The plaintiff spent less time in the office (located in the residence) but was occupied with her cleaning business and occasionally pursued her florist business at the home. At one point in this period she did drive a truck full time for a six-week period.
The parties, by 1994, were taking separate vacations. While the defendant vacationed with the children in Maine that summer, the plaintiff, after engaging in excessive drinking, traveled to Tennessee with a male acquaintance. He testified at the trial that they engaged in consensual sex on the trip. The plaintiff testified to the contrary. When the defendant returned from his vacation the plaintiff was still in Tennessee. Upon her return he claims that he would not allow her in the house and they separated. She claims that she left in the summer of 1994 because of an incident involving drinking at the home, after which the defendant grabbed her by the throat in addition to verbally abusing her. They have been separated since then. The defendant resides in the family residence on Jordan Road. The plaintiff, with considerable financial assistance from her mother, has purchased a rental property in Willimantic (Windham) where she resides with two of the children. The oldest child resides with the defendant.
In 1995, after losing the Mansfield contract the defendant sold the assets of the business to a competitor, Tobacco Valley, which had underbid him in the Mansfield negotiations. The sales price was $270,000. He received $105,000 cash of which $98,000 went to pay existing secured and unsecured debt; $7000 was spent on a motorcycle. The balance of $165,000 was to be paid by a note in monthly installments. Because of a side agreement the balance due was later reduced by $28,000. Monthly payments are currently being made in the amount of $3200. Payments will end in 1999.
In 1996, from the monthly payments, the defendant paid unsecured debt of $32,000. In 1995 and 1996 the defendant paid $9500 in federal taxes as a result of the sale.
Prior court approved agreements provided for the defendant to pay portions of the monthly payments to an escrow account. He has CT Page 788 failed to comply with this agreement. There is now $13,400 in the account. There should be an additional $7,000 in the account.
The plaintiff is currently a wage earner making $200 weekly. At some point she seeks to return to her career in horticulture. The defendant, after several months of being unemployed, currently earns $300 as an independent truck driver for a mail carrier.
The parties are in agreement regarding custody of and visitation with the children.
Their excessive partying does not appear to have affected their parenting abilities. In fact, the plaintiff was named mother of the year by a local PTO in 1994.
They are at odds over ownership of the residence on Jordan Road in Windham. Both seek sole ownership of it, subject to a life use in the defendant's father, who testified that he would not be comfortable with the plaintiff's ownership of the property under the current circumstances.
After hearing the testimony the court concludes the marriage has broken down irretrievably and that the parties are equally responsible for the breakdown. Each resents the other's excessive use of alcohol and drugs during the marriage that caused the behavior in 1994 that resulted in their separation, a separation that has existed for three and one-half years. There is no reasonable likelihood of reconciliation. The marriage should be dissolved. Since the parties share fault for the breakdown, the court, being mindful of the provision of Chapter 815j of the Connecticut General Statutes, particularly §§ 46b-81, 46b-82,46b-84 and 46b-87, and relevant case law, finds the following orders to be fair and equitable:
1. The marriage of the parties is dissolved on the ground of irretrievable breakdown;
2. Neither party is awarded alimony;
3. By way of property settlement the plaintiff shall quitclaim her interest in the 54 Jordan Road, Windham premises to the defendant. He shall be solely responsible for any mortgage(s), taxes, liens and insurance and shall save the plaintiff harmless from any claims relative to the premises. He CT Page 789 shall execute a promissory note payable to the plaintiff in the amount of $70,000 with interest at the rate of 6% payable when the youngest child of the parties reaches 18, or when the defendant remarries or sells the property, whichever first occurs.
The balance of the purchase price of Garbage Busters, approximately $3200 monthly until some time in 1999 shall be divided equally between the parties.
The defendant is ordered, within 30 days, to repay the $7000 to the court ordered escrow account bringing its balance to $20,700. He is to then pay the Fleet Bank equity loan in the approximate amount of $16,000, after which he shall divide the proceeds of the equity account equally with the plaintiff. The defendant's share shall be reduced by an arrearage in his pendente life support orders in the approximate amount of $1400 and paid to the plaintiff. Further, he shall be solely responsible for the Liberty Bank loan in the amount of $6000 and he shall hold the plaintiff harmless from any claims arising therefrom;
4. The defendant is ordered to maintain at his expense medical and dental insurance for the benefit of the minor children (and the plaintiff at her expense for so long as applicable law permits) as available to him at his place of employment until the youngest child reaches the age of 19 or graduates from high school, whichever first occurs. All unreimbursed/uninsured medical and dental expenses shall be shared equally by the parties.
5. Per the agreement of the parties with an assist from family relations counselors, the parties shall have joint legal custody of the three minor children, Leigh Doucette Gauthier, Armand Benoit Gauthier and Spencer Lawrence Gauthier. Primary residence of Leigh shall be with father and primary residence of Armand and Spencer shall be with mother.
During the school week Leigh shall reside with father and have contact with mother as arranged between mother and son.
During the school week Armand and Spencer shall reside with mother and father shall have access on weekends. Mother shall have weekend access and father weekly access as mutually agreed to. CT Page 790
The parents shall share holidays and vacations according to mutual agreement.
This agreement is contingent upon both parties maintaining lifestyles free from substance abuse;
6. The defendant shall pay to the plaintiff the sum of $100 weekly as child support until the youngest child attains the age of nineteen (19) or graduates from high school, whichever first occurs. This sum deviates from the Connecticut Child Support and Arrearage Guidelines because of the split custody agreement and the high cost of medical insurance for the children. The defendant shall be entitled to claim the three minor children as income tax exemptions;
7. No order of counsel fees is entered;
8. With the exception of specific orders to the contrary herein, each party shall be entitled to the ownership of the assets and shall be responsible for the payment of the liabilities shown on his and her respective proposed orders or financial affidavits and shall hold the other harmless from any liabilities set forth therein or any liabilities in connection with the assets;
9. The court shall retain jurisdiction to enter such orders as may be necessary in order to effectuate the provisions of the judgment;
10. The plaintiff shall prepare the judgment file.
Potter, J.